# Exhibit 1

## ASSIGNMENT AND SUBORDINATION AGREEMENT

This Assignment and Subordination Agreement (this "**Assignment**"), is made and entered into by and between Tsujiorka Walker ("**Walker**") and Deborah K. Ebner, not individually but solely in her capacity as the chapter 7 trustee (the "**Trustee**") for the bankruptcy estate of Lakesha R. Steward (the "**Estate**"). The Trustee and Walker are collectively referred to as the "Parties".

## RECITALS

R1. WHEREAS, Walker has an injury claim arising out of a motor vehicle collision which occurred on May 23, 2015 at or near 14510 Indiana Avenue, in the City of Riverdale, County of Cook, State of Illinois.

R2. WHEREAS, the collision of May 23, 2015 caused severe injuries to Walker.

R3. WHEREAS, liability on behalf of Steward for negligence is reasonably clear because the evidence available at the time Walker made his original settlement demand to Steward and her insurance carrier, United Equitable Insurance Company, was that two independent eyewitnesses gave statements that Steward made a U turn from a parking spot and in doing so struck Walker, who was on a motorcycle, and that Walker could not have avoided the collision. This evidence was corroborated by the investigating police officer, and was later testified to at trial. There was no contradictory evidence. The trial court, after hearing the evidence, concluded there was no evidence of contributory negligence on behalf of Walker.

R4. WHEREAS, United Equitable Group, Ltd. as the parent owner of United Equitable Insurance Company, owns all of the capital stock of United Equitable Insurance Company.

R5. WHEREAS, United Equitable Insurance Company has a management agreement with its parent, United Equitable Group, Inc., whereby the parent provides corporate shared services to all companies within the United Equitable Group organization, including United Equitable Insurance Company. United Equitable Group, Ltd. and its subsidiaries, including United Equitable Insurance Company, will hereinafter be referred to as "United Equitable Insurance Company.

R6. WHEREAS, on February 10, 2016 Walker made a time limit settlement demand to Steward's liability insurance carrier, United Equitable Insurance Company, to settle the case for her policy limits of $25,000 by February 24, 2016, noting that medical bills already exceeded $181,000.00 at that time.

1

R7. WHEREAS, the insurance carrier, United Equitable Insurance Company, refused Walker's time limited demand to settle within the policy limits and exposed its insured, Steward to uninsured liability.

R8. WHEREAS, in addition to refusing to settle on behalf of its insured, Steward, United Equitable Insurance Company chose to rescind its insured's policy of liability insurance, without first receiving court approval.

R9. WHEREAS, from October 15, 2013 through April 18, 2014, prior to the collision, United Equitable Insurance Company was under investigation by the Illinois Department of Insurance for improperly rescinding policies of insurance, and United Equitable Insurance Company was aware of this investigation.

R10. WHEREAS, the Illinois Department of Insurance, through the Examiner-in-Charge, reported the results of its investigation of United Equitable Insurance Company, from October 1, 2011 through August 31, 2013, and found that United Equitable Insurance Company had a pattern and practice of rescinding auto policies when there was no evidence or proof of misrepresentation by the insured applicant or intent to deceive, in violation of 215 ILCS 5/154, among other charges.

R11. WHEREAS, from October 1, 2011 through August 31, 2013, United Equitable Insurance Company was also under investigation by the Illinois Department of Insurance, for failing to adopt and implement reasonable standards for the prompt investigation and settlement of claims arising under its policies in violation of 215 ILCS 5/154.6(c), among other charges.

R12. WHEREAS, on October 31, 2016, John P. Heywood, United Equitable Insurance Company's President and Chief Operating Officer, signed a Stipulation and Consent Order with the Illinois Department of Insurance, that it would "institute and maintain policies and procedures whereby the Company will not rescind auto policies without evidence or proof of misrepresentation by the insured applicant as required by 215 ILCS 5/154." This Stipulation and Consent Order was witnessed and notarized by United Equitable Insurance Company's Claims Manager, Ronald Clark.

R13. WHEREAS, on October 31, 2016, John P. Heywood, United Equitable Insurance Company's President and Chief Operating Officer, signed a Stipulation and Consent Order with the Illinois Department of Insurance, that it will "institute and maintain policies and procedures whereby the Company will effectuate prompt, fair and equitable settlements to the third party when liability is reasonably clear as required by 215 ILCS 5/154.6(d); and will have standards to promptly investigate and settle third party claims as required by 215 ILCS 5/154.6(c) and 215 ILCS

5/154.6(g)." This Stipulation and Consent Order was witnessed and notarized by United Equitable Insurance Company's Claims Manager, Ronald Clark.

R14. WHEREAS, during the investigation by the Illinois Department of Insurance, United Equitable Insurance Company nevertheless rescinded Steward's policy of insurance without conducting an adequate investigation and without evidence of misrepresentation.

R15. WHEREAS, during and after the investigation by the Illinois Department of Insurance, and after the Stipulation and Consent Order, United Equitable continued to falsify to its policy holders the contents of the Misrepresentation statute, 215 ILCS 5/154, both within its policy of insurance and in correspondence with its policyholder, Steward.

R16. WHEREAS, United Equitable Insurance Company rescinded its policy of insurance and refused to defend Steward for the same reasons under which it knew it was under investigation by the Illinois Department of Insurance.

R17. WHEREAS, on February 8, 2016, United Equitable Insurance Company rescinded its insured's policy back to the date of inception.

R18. WHEREAS, the rescission letter directed to Steward, dated February 8, 2016, states "It is the position of United Equitable Insurance that the above references policy is null and void from inception due to a material misrepresentation on your policy application." By doing so, as of February 8, 2016, United Equitable Insurance Company breached its duty to defend Steward.

R19. WHEREAS, on February 8, 2016, United Equitable Insurance Company, sent letters to its insured, Walker, and Walker's attorney, stating that "coverage is not applicable for this incident as this policy was rescinded," (emphasis included in original) and "We are unable to honor any request for payment. Your claim is respectfully denied." All said communications were made without a determination by the Court as to the applicability of coverage or rescission.

R20. WHEREAS, after rescission, United Equitable Insurance Company filed a "Chancery Declaratory Action" on February 25, 2016 in the Circuit Court of Cook County, requesting a ruling seeking to condone its past conduct, that it had no duty to defend or indemnify Steward and to find that the policy was null and void.

R21. WHEREAS, United Equitable Insurance Company's claims adjuster, Kathryn Townsend, testified in the Chancery Division case that a policy of insurance can only be rescinded if there is a false statement that goes to a material risk insured against, that she was not familiar with the underwriting manual so could not say whether Steward failed to disclose any risk factors, and that she did

3

not remember if she gave to Ron Clark, her claims manager, any investigation to make a determination to rescind the Steward policy. She stated that her investigation was turned over to management for review.

R22. WHEREAS, an insurance company is obligated to look for and find insurance coverage when it exists when investigating a claim.

R23. WHEREAS, Ron Clark, the United Equitable Insurance Company claims manager, testified in the Chancery case that it was his decision to rescind Steward's policy of insurance, and that he did not have any actuary evidence to support his decision of whether she was an acceptable risk. He testified that Steward fully cooperated with United Equitable Insurance, and there was nothing that was asked of her that was not supplied to United Equitable Insurance Company. He testified that he did not know whether the reasons for rescinding the policy of insurance were supported by any actuary data that showed they materially affected either the acceptance of the risk or the hazard assumed by the company. He confirmed that there was no indication that the alleged undisclosed resident was a resident at the time Steward applied for her policy of insurance.

R24. WHEREAS, Charles Sullivan, the manager of underwriting for United Equitable Insurance Company, testified in the Chancery case that at the time he approved rescinding Steward's policy of insurance, there was a 3 year look back period. He testified that there was nothing in the 3 year look back period that showed any major driving violations, and that an undisclosed driver, if discovered, would allow United Equitable Insurance Company to surcharge the insured but not rescind the policy of insurance. He testified that none of the points in the rate sheets were applicable to raising the rates of Steward. He testified that he had no actuarial information that nondisclosure of a non-driver would affect the rates, or that it would materially have increased the risk. Mr. Sullivan testified that other than ordering a police report, he is not aware of any investigation performed in this case prior to the denial of the claim and the rescinding of the policy.

R25. WHEREAS, on December 14, 2018 the Circuit Court of Cook County entered summary judgment against United Equitable Insurance Company, finding that as a matter of law and based on the evidence "there was not a misrepresentation".

R26. WHEREAS, United Equitable Insurance Company's breach of its duty to defend resulted in a lawsuit being filed by Walker against Steward.

R27. WHEREAS, as a result of the aforementioned collision and the breach of duty to defend, a jury trial took place in the Circuit Court of Cook County in a case entitled Tsujiorka Walker v. Lakesha Steward, case number 20 L 1335.

R28. WHEREAS, the jury trial resulted in a verdict in favor of Walker on March 23, 2022 in the amount of $827,868.00.

R29. WHEREAS, interest at the statutory rate of 9% per annum continues to accrue on the verdict from March 23, 2022.

R30. WHEREAS, United Equitable filed a Notice of Appeal to the First District of the Illinois Appellate Court on July 15, 2022, but decided not to file an appeal bond on behalf of Steward, which would have protected Steward from immediate execution of the judgment while the appeal was in progress.

R31. WHEREAS, Walker filed a Citation to Discover Assets against Steward on December 12, 2022.

R32. WHEREAS, according to the Disclosure of Compensation of Attorney for Debtor's filings with the U.S. Bankruptcy Court under 11 U.S.C §329(a), disclosure was made that on or about September 19, 2022, United Equitable Insurance Company paid bankruptcy attorneys $2000.00 on behalf of Steward for the purpose of her filing her personal chapter 7 bankruptcy.

R33. WHEREAS, on December 29, 2022 Lakesha R. Steward filed Chapter 7 bankruptcy, and from that moment all further court proceedings were automatically stayed pursuant to section 362 of the Bankruptcy Code.

R34. WHEREAS, Walker and Trustee therefore agree that a reasonable value of Walker's injury case is the jury verdict of $827,868.00 plus statutory interest at 9% per annum from the date of judgment.

R35. WHEREAS, among the assets of the Estate is a bad faith claim against United Equitable Insurance Company, which currently has an unknown value, but has the potential for a substantial value.

R36. WHEREAS, Steward listed general unsecured claims in the amount of $833,400.82 in her Schedule F, of that amount, $827,868.00 was the claim of Walker.

R37. WHEREAS, to date, Walker has filed the only proof of claim against the Estate in the amount of $1,400,000.00.

R38. WHEREAS, the Parties are pursing this Assignment, in part, to prevent abuse of the bankruptcy system by Equitable, and in an effort to preserve Steward's claims against Equitable.

5

## AGREEMENT

**NOW THEREFORE**, intending to be bound legally and in consideration of the mutual promises and covenants contained herein and other good and valuable consideration, the receipt and sufficiency of which is hereby acknowledged, the Parties hereby agree, subject to approval by the Bankruptcy Court for the Northern District of Illinois, as follows:

**1.** *Recitals*. The foregoing recitals and prefatory phrases and paragraphs, which are incorporated herein by reference and made part of this Assignment, are true and correct.

**2.** *Court Approval Required*.

    a.    No later than seven (7) days after execution of this Assignment by all Parties, the Trustee shall file a motion in the Case seeking entry of an order approving the Assignment (the "***Order***").

    b.    The Parties expressly acknowledge that this Assignment is subject to and conditioned upon the approval of the Bankruptcy Court of the Order which must become a **Final Order.** This Assignment shall be null and void if such approval is not obtained or is denied. A **Final Order** is an order that is final for purposes of 28 U.S.C. 158, is no longer subject to appeal or certiorari proceedings and no appellate or certiorari proceedings are pending. The parties reserve the right to jointly waive the requirement of finality.

**3.** *Consideration and Timing*.

    a.    Walker must pay to the Trustee the sum of $10,000 within 30 days of entry of the Order.

    b.    Additionally, Walker hereby subordinates his claim against the Estate to the claims of all timely and untimely filed general unsecured claims.

    c.    In exchange, the Trustee assigns to Walker all of the Estate's actions, claims, and demands, to the greatest extent allowed by law, against Lakesha R. Steward, United Equitable Insurance Company, United Equitable Group, Ltd., or any of their agents or agencies, relating to that motor vehicle collision which occurred on May 23, 2015 and the subsequent litigation related thereto, including the insurance bad faith cause of action.

**4.** *Effective Date*. The "*Effective Date*" of this Assignment is the first date upon which all of the following have occurred:

    a.    All Parties have executed the Assignment; and

    b.    Walker has delivered $10,000 to the Trustee and it has cleared the account upon which it is drawn; and

    c.    The Order has become final and non-appealable.

**5. *Reasonably Equivalent Value*.** The Parties hereby acknowledge and agree that the consideration set forth herein represents fair consideration and reasonably equivalent value for the transactions, covenants and agreements herein set forth, which consideration was agreed upon as the result of arms' length, good-faith negotiations between the Parties and their respective representatives.

**6. *Binding Effect*.** Each Party represents and warrants that it has the authority to execute this Assignment as its binding and legal obligation except that the Trustee's authority is subject to the approval of the Bankruptcy Court as discussed above. This Assignment shall be binding upon and inure to the benefit of the Parties and their respective successors, assigns, subsidiaries, affiliates, related entities, administrators, beneficiaries, receivers, trustees, legal representatives, insurers, agents, attorneys, shareholders, officers, directors, employees, managers, members, partners, and any other related persons and entities.

**7. *Legal Authority*.** Each Party represents and warrants that the persons signing this Assignment on its behalf are authorized to execute this Assignment, and each person signing this Assignment on behalf of a Party represents and warrants that he or she has the right, power, legal capacity and authority to enter into this Assignment on behalf of such Party and bind such Party to perform each of the obligations specified herein except that the Trustee's authority is subject to the approval of the Bankruptcy Court as discussed above.

**8. *Entire Agreement*.** This Assignment constitutes the entire agreement between the Parties, and the Parties acknowledge that they have entered into the Assignment solely in reliance upon the consideration stated herein. This Assignment supersedes all prior and contemporaneous negotiations, understandings, and Assignments, both written and oral, between the Parties with respect to the subject matter hereof. The Parties further agree and understand that the terms, provisions and conditions of this Assignment may not be altered or modified except by a subsequent writing signed by both Parties.

**9. *Governing law*.** The Parties agree and understand that any disputes over the interpretation or enforcement of this Assignment shall be governed by the laws of the state of Illinois without regard to conflict of law provisions. The Parties further agree that the Bankruptcy Court for the Northern District of Illinois, Eastern

Division shall be the exclusive forum in the event of a dispute under the Assignment.

**10.** *Enforcement*. In the event of a breach of the terms of this agreement by either party, the breaching party shall pay any and all reasonable fees and expenses that the non-breaching party incurs in enforcing this Assignment including but not limited to attorneys fees, paralegal fees, and costs.

**11.** *Headings*. Headings, titles and captions preceding the sections of this Assignment are provided for convenience of reference and shall not be used to explain or to restrict the meaning, purpose, or effect of any provision to which they refer.

**12.** *Review by Counsel*. The Parties hereby specifically acknowledge and represent that they have consulted with their respective attorneys or have had the opportunity to consult with, their respective counsel of choice regarding the terms and conditions of this Assignment. This Assignment shall be construed and interpreted according to the ordinary meaning of the words used so as to fully accomplish the purposes and intentions of the Parties. This Assignment shall be deemed to have been drafted by all the Parties equally and shall not be construed against any Party as draftsperson.

**13.** *Interpretation*. Whenever the context so requires in this Assignment, all words used in the singular shall be construed to have been used in the plural (and vice versa), each gender shall be construed to include any other genders, and the word "person" shall be construed to include a natural person, a corporation, a firm, a partnership, a joint venture, a trust, an estate or any other entity.

**14.** *Counterparts*. This Assignment may be executed in any number of counterparts, each of which shall constitute one and the same instrument, and any Party hereto may execute this Assignment by signing any such counterpart. The delivery of an executed counterpart of a signature page to this Assignment by telecopier or other electronic transmission (for example, emailed copies of signatures in "pdf" format) shall be effective as delivery of a manually executed counterpart of this Assignment.

**15.** *Signature*. A facsimile signature shall be treated in all manner and respects as a binding and original signature, and such signature of either of the Parties shall be considered for these purposes as an original signature. The person or persons who execute this Assignment by or on behalf of the Parties each warrant and represent that he or she has been duly authorized and empowered to execute and deliver this Assignment on behalf of such Party or Parties.

[THE REST OF THIS PAGE INTENTIONALLY LEFT BLANK]

**IN WITNESS THEREOF**, the undersigned have executed this Assignment this 25 day of April, 2024.

Tsujiorka Walker

_____
[Signature]

By: _Tsujiorka Walker_____
[Print]

Its: _____
[Title]

STATE OF ILLINOIS  )
                   ) SS.
COUNTY OF Cook     )

The undersigned, a notary public in and for the above county and state, certifies that _Tsujiorka Walker_ is known to me to be the same person whose name is subscribed to the foregoing instrument, and that he/she appeared before me this day in person and acknowledged that he signed, sealed, and delivered the said instrument as his/her free and voluntary act, for the uses and purposes therein set forth.

Dated: _April 25 2024_ (Seal)

X_____
Notary Public
My commission expires: 6-21-2027

Official Seal
STEWART D ST...
Notary Public, State ... ...
Commission No. 314170
My Commission Expires June 21, 2027

10

Deborah K. Ebner, not individually but solely in her capacity as the chapter 7 trustee for the bankruptcy estate of Lakesha R. Steward,

_____
[Signature]

STATE OF ILLINOIS  )
                   ) SS.
COUNTY OF Cook     )

The undersigned, a notary public in and for the above county and state, certifies that <u>Deborah K. Ebner</u> is known to me to be the same person whose name is subscribed to the foregoing instrument, and that he appeared before me this day in person and acknowledged that he signed, sealed, and delivered the said instrument as his free and voluntary act, for the uses and purposes therein set forth.

Dated: 5/7/2024 _____ (Seal)

_Danielle Mesikapp_
Notary Public

My commission expires: 8/4/2026

DANIELLE MESIKAPP
OFFICIAL SEAL
Notary Public, State of Illinois
My Commission Expires
August 04, 2026

11