**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| In re: | ) | Chapter 7 |
| | ) | |
| LAKESHA R. STEWARD, | ) | Case No. 22 B 14986 |
| | ) | |
| Debtor. | ) | Honorable Michael B. Slade |
| | ) | |

**MEMORANDUM OPINION**

On May 23, 2015, while driving her car, Lakesha Steward hit Tsujiorka Walker, who was riding a motorcycle. Walker sued. Following a jury trial in state court, on March 23, 2022, Walker obtained a judgment against Steward for $827,868 (the "Judgment").

The state court trial had not been without controversy. As part of her defense, Steward retained an expert toxicologist to testify on Walker's (allegedly high) blood alcohol level at the time of the accident, among other things, to demonstrate that Walker was contributorily negligent. But the state trial judge granted a motion *in limine*, barring the defense expert from testifying, and did not instruct the jury on contributory negligence. Raising these legal issues, Steward appealed, and briefing in the Illinois Appellate Court was completed on December 13, 2022.

Unable to bond the Judgment, Steward sought relief here under chapter 7 of the Bankruptcy Code on December 29, 2022 (the "Petition Date"). But no one told the Illinois Appellate Court. So the Illinois Appellate Court did what courts typically do: it ruled on Steward's appeal, issuing its opinion on March 22, 2023. The Appellate Court reversed the Judgment and remanded the case for a new trial, finding that "[w]hile [expert] testimony as to plaintiff's actual intoxication or impairment was properly excluded, his testimony as to plaintiff's blood alcohol level and the effects of alcohol consumption generally should have been admitted." *Walker v. Steward*, 2023 IL App (1st) 221056-U, ¶ 41 (the "Appellate Order").

The motion now before me (Dkt. No. 70) asks what to make of the Appellate Order. Walker, seeking to rely on the Judgment and to ignore what happened on appeal to collect against Steward's insurance company, United Equitable Insurance Company ("UEIC"), posits that the Illinois Appellate Court's decision is void and avers that Steward waived her and UEIC's appellate rights by seeking relief under chapter 7. From Walker's perspective, the Judgment is simply final. UEIC, maintaining that such a result cannot logically be so, asks for very limited relief: to "retroactively lift the automatic stay" such that the Appellate Order would stand.

For the reasons that follow, the motion is granted and Walker's objections are overruled. The automatic stay that was imposed by section 362(a) of the Bankruptcy Code is annulled under 11 U.S.C. § 362(d)(1) as to the Appellate Order, effective as of the Petition Date.

Most of the extensive history between the three parties—Steward, Walker, and UEIC—appended to the pleadings is irrelevant to the question before me. What is germane is that:

(a)     The Judgment against Steward (the Debtor) was subject to a fully briefed appeal that was pending as of the Petition Date;

(b)     Steward received a discharge under section 727 of the Bankruptcy Code from which no exceptions were sought or ordered, including by Walker,[1] and for which the appeal period has long expired, *see* Fed. R. Bankr. P. 8002(a)(1);

(c)     According to the chapter 7 trustee's final report, Walker is the only creditor in Steward's case and the only party due to receive payment ($447.87) from estate assets apart from the trustee and her attorneys, *see* Dkt. No. 61 at 2, 10–11; and

(d)     UEIC, according to both it and Walker, had and has a pecuniary interest in the outcome of Walker's personal injury suit against Steward.

---

[1]     Walker filed a prior motion to extend those deadlines that was granted by my predecessor. But the extended deadline to object to Steward's discharge and/or dischargeability of the claims brought by Walker against Steward expired on July 3, 2023, with no action by Walker. *Order Granting Motion to Extend Deadlines to Object to Discharge and Dischargeability*, Dkt. No. 25; *see also* 11 U.S.C. § 523(a)(6), and (c); Fed. R. Bankr. P. 4004(a), 4007(c).

The first issue presented by the motion is whether issuing the Appellate Order violated the automatic stay. Despite UEIC's suggestion to the contrary, it did. Section 362 "stays appeals in actions against the debtor as well as initial lawsuits." 3 COLLIER ON BANKRUPTCY ¶ 362.03 (Richard Levin & Henry J. Sommer eds., 16th ed.). The plain language of the Bankruptcy Code makes this clear. 11 U.S.C. § 362(a)(1) ("[A] petition filed . . . operates as a stay . . . of—(1) the commencement or continuation . . . of a judicial, administrative, or other action or proceeding against the debtor . . . .") The Seventh Circuit has confirmed this straightforward reading. *Sheldon v. Munford, Inc.*, 902 F.2d 7, 9 (7th Cir. 1990) ("The policy behind the automatic-stay provision is applicable [to appeals of judgments against a debtor, even where the debtor posted a supersedeas bond] and nothing in the text or history of the provision supports the creation of an exception."). And other courts agree.[2] As Steward's appeal of the Judgment was stayed, the Appellate Order was issued in violation of the stay and is thus "voidable . . . , if not void *ab initio*." *Duff v. Cent. Sleep Diagnostics, LLC*, 801 F.3d 833, 843 (7th Cir. 2015).[3]

UEIC is correct, however, that I can grant retroactive relief from the stay under 11 U.S.C. § 362(d)(1). *See, e.g.*, *In re Brittwood Creek, LLC*, 450 B.R. 769, 774 (N.D. Ill. 2011) ("[T]he Court finds that § 362(d) provides the Bankruptcy Court with power to retroactively annul the automatic stay.") (citing cases); *In re Rice*, 613 B.R. 690, 695 (Bankr. N.D. Ill. 2020) ("A bankruptcy court's decision to annul the automatic stay pursuant to 11 U.S.C § 362(d) is committed

---

[2]   *E.g.*, *Parker v. Bain*, 68 F.3d 1131, 1135–36 (9th Cir.1995) (stating the court "need not spill a great deal of ink discussing the assertion . . . that an appeal *by* the debtor cannot constitute the continuation of an action *against* the debtor" and that it joined seven other circuits in that view (emphasis in original)); *Simon v. Navon*, 116 F.3d 1, 4 (1st Cir. 1997) ("[T]he fact that it was the debtor, rather than a creditor, . . . does not alter the fact that it constitutes a 'continuation' of an 'action or proceeding against the debtor' within the terms of § 362." (citing and quoting *Parker*, 68 F.3d at 1135)).

[3]   *See also Middle Tenn. News Co. v. Charnel of Cincinnati, Inc.*, 250 F.3d 1077, 1082 n. 6 (7th Cir. 2001) (noting the debate among circuits over whether actions taken in violation of the automatic stay "are void or merely voidable"); *accord Kimbrell v. Brown*, 651 F.3d 752, 755 (7th Cir. 2011).

to the Court's discretion."); 3 COLLIER ON BANKRUPTCY ¶ 362.07[1] ("[I]t seems clear that a court has the power to validate actions taken in violation of the stay, either by viewing them as merely voidable or by annulling the stay retroactively.").  While the Seventh Circuit has only addressed the issue in dicta in a nonprecedential opinion, *see Ruby Tuesday, Inc. v. Thomas*, 37 F. App'x 821, 824 (7th Cir. 2002) (citing authority for the proposition that "bankruptcy courts may annul [the] automatic stay to validate proceedings that would otherwise be void ab initio"), seven other circuits have addressed it directly and have all come to the same conclusion.  *See In re Soares*, 107 F.3d 969, 976 (1st Cir. 1997) ("We [hold] that 11 U.S.C. § 362(d) permits bankruptcy courts to lift the automatic stay retroactively and thereby validate actions which otherwise would be void."); *E. Refractories Co. Inc. v. Forty Eight Insulations Inc.,* 157 F.3d 169, 172 (2d Cir. 1998) (same); *In re Myers*, 491 F.3d 120, 127-28 (3d Cir. 2007) (same); *Sikes v. Glob. Marine, Inc.*, 881 F.2d 176, 178 (5th Cir. 1989) (same); *Easley v. Pettibone Michigan Corp.,* 990 F.2d 905, 910 (6th Cir. 1993) (same); *Mataya v. Kissinger (In re Kissinger)*, 72 F.3d 107, 108–09 (9th Cir. 1995) (same); *In re Albany Partners, Ltd.,* 749 F.2d 670, 675 (11th Cir. 1984) ("§ 362(d) expressly grants bankruptcy courts the option, in fashioning appropriate relief, of 'annulling' the automatic stay, in addition to merely 'terminating' it.  The word 'annulling' in this provision evidently contemplates the power of bankruptcy courts to grant relief from the stay which has retroactive effect; otherwise its inclusion, next to 'terminating', would be superfluous.").

When considering whether to grant this relief, "[i]t is intuitively obvious that determining whether cause exists to modify the stay to permit a lawsuit to proceed in another court requires a balancing of the costs and benefits of maintaining the stay." *In re Comdisco, Inc.*, 271 B.R. 273, 276 (Bankr. N.D. Ill. 2002).  But whether there is "cause" to modify the stay "has no clear definition and is determined on a case-by-case basis." *Int'l Bus. Machines v. Fernstrom Storage*

4

*& Van Co. (In re Fernstrom Storage & Van Co.)*, 938 F.2d 731, 735 (7th Cir. 1991) (quoting

*Christensen v. Tucson Estates, Inc. (In re Tucson Estates, Inc.)*, 912 F.2d 1162, 1166 (9th Cir.

1990)).  A case-specific approach, reviewing the details of the situation alongside the factors courts

consider when assessing whether to lift the stay, is necessary and appropriate given the many

different reasons it might make sense to lift the stay in any given scenario.[4]  Prior opinions advise

me to "consider[] all the circumstances of this case, identif[y] the most pertinent factors that arose

from those circumstances, and weigh[] those factors in balancing the costs and benefits of

maintaining the stay," but caution that, because "the inquiry must be case-specific, copying and

checking off lists of 'factors' from other cases that had different facts is all but useless."  *Comdisco*,

271 B.R. at 276 ("As the 7th Circuit has recognized, 'a list of factors without a rule of decision is

just a chopped salad.'" (quoting *In re Synthroid Mktg. Litig.*, 264 F.3d 712, 719 (7th Cir. 2001))).

Here, lifting the stay causes no hardship to the debtor or the estate.  Steward has already

received a discharge, including with respect to Walker's tort claim.  The distributions proposed by

the chapter 7 trustee in her Final Report do not call for Walker to share *pro rata* with any other

claimant; therefore, any change to the ultimate value of Walker's allowed claim that might occur

as a result of any retrial could have no effect on the administration of the chapter 7 estate.  The

papers, further, suggest that UEIC is solely responsible for defense costs under the policy, and if it

sought contribution from Steward, any such claim was likely discharged.  As the Seventh Circuit

observed in *Fernstrom*, "debtors-defendants suffer little prejudice when they are sued by plaintiffs

---

[4]   *See, e.g.*, *Fernstrom*, 938 F.2d at 735 (using a three-factor test that evaluates the prejudice to the debtor caused by lifting the stay, hardship to the non-debtor caused by maintaining the stay, and the probability of the creditor's success of prevailing on the merits to evaluate cause to lift the stay); *Brittwood Creek*, 450 B.R. at 775 (observing that courts "have utilized a variety of factors" to determine whether there is cause to annul the stay); *In re Wapotish*, No. 07-71218, 2009 WL 1916965, at *1–2 (Bankr. N.D. Ill. July 2, 2009) (assembling an inexhaustive list of 15 factors used to evaluate requests for stay relief culled from 12 different opinions issued across the country).  Notably, one of my colleagues previously observed that *Fernstrom*'s "three-factor test is inartful outside of the circumstances for which it is intended," which were a non-debtor plaintiff seeking relief to continue a civil suit against the debtor.  *In re Robinson*, 577 B.R. 294, 306 (Bankr. N.D. Ill. 2017).

who seek nothing more than declarations of liability that can serve as a predicate for a recovery against insurers." 938 F.2d at 736. Thus, here, the benefits of maintaining the stay (and any burden from modifying it) to Steward and her estate are hard to see. As one of my colleagues concluded in another "old chapter 7 liquidation," "[i]t is difficult to conclude prejudice where there is nothing to prejudice." *In re D/C Distrib., LLC*, 617 B.R. 600, 612 (Bankr. N.D. Ill. 2020).

There is no apparent undue hardship to any non-debtor party in lifting the stay, either. While enabling the Appellate Order to stand would only reverse the Judgment, the expected next step would be for Walker to pursue insurance proceeds in a retrial with Steward as a nominal defendant only.[5] That is common. No self-insurance retention (SIR) or deductible in the UEIC policy has been identified that might burden the Debtor; and I am aware of no other party that has asserted a claim against the UEIC policy (and, given the lapse of time since the accident and what has occurred in the interim, any such party would likely be barred if it were to come forward now).[6] And the benefit of modifying the stay to the non-debtor parties is fairly clear: doing so will permit a resolution of the tort claim (and thus the extent of UEIC's monetary liability, if any) on the merits. For these reasons, had the Debtor, UEIC, or Walker requested lifting the stay at the outset of this bankruptcy, I expect that my predecessor would have granted such a motion summarily as no party would have been harmed by lifting the stay.

---

[5]  *See Hendrix v. Page (In re Hendrix)*, 986 F.2d 195, 197 (7th Cir. 1993) ("[A] suit to collect merely the insurance proceeds . . . would not create 'a personal liability of the debtor,' because only the insurance company would be asked to pay anything, and hence such a suit would not infringe the discharge."); *Houston v. Edgeworth (In re Edgeworth)*, 993 F.2d 51, 53–54 (5th Cir. 1993) (explaining that a "discharge in bankruptcy does not extinguish the debt itself, but merely releases the debtor from personal liability for the debt" and "the scope of a section 524(a) injunction does not affect the liability of liability insurers and does not prevent establishing their liability by proceeding against a discharged debtor").

[6]  *Cf. Hawxhurst v. Pettibone Corp.*, 40 F.3d 175, 179 n.1 (7th Cir. 1994) (noting concern that lifting the stay would permit a tardy claimant to receive insurance proceeds at the expense of timely creditors); 3 COLLIER ON BANKRUPTCY ¶ 362.07[3][a].

Further, at a higher level, rather than performing a precise accounting of prescribed factors, determining whether there is cause to annul the stay is an exercise in common-sense judgment as to whether doing so makes practical sense under the circumstances. *See, e.g.*, *AP Siding & Roofing Co. v. Bank of New York Mellon*, 548 B.R. 473, 479–80 (N.D. Ill. 2016) ("But, generally, courts will find cause for an annulment of the automatic stay if doing so is consistent with the same equitable principles that guide bankruptcy proceedings at large."). Here, maintaining the stay would be unjust and would only invite mischief. The Judgment that Walker obtained against the Debtor was hard-fought, but it was not without controversy, and the Illinois Appellate Court held that it was obtained because of incorrect evidentiary rulings by the state trial judge. To effectively ignore that decision and to allow the Judgment to stand would not serve the interests of justice. Indeed, even if the Appellate Order was deemed "void" because it was entered in violation of the stay, the logical result would be for the appeal to proceed on its normal schedule after the stay was lifted, and the conclusion from the Illinois Appellate Court should ultimately be the same. To instead say that the Judgment stands, and that some procedural maneuvers by Walker prohibit the Debtor (or UEIC, which is the economic stakeholder) from appealing, seems to me illogical.[7]

Walker offers several arguments in opposition to the motion. First, Walker asserts that UEIC lacks standing to bring the motion at all. While it is true that insurance companies seeking to participate in certain bankruptcy events have sometimes been denied standing, those decisions are distinguishable. In *D/C Distribution*, my colleague held that the debtor's insurance carrier lacked standing to oppose lifting the automatic stay to permit asbestos plaintiffs to pursue claims against the debtor. 617 B.R. at 609. But the statement Walker quotes—"that a movant only needs

---

[7]   *Cf. Kissinger*, 72 F.3d at 109 ("[N]ot annulling the stay would [] lead to nonsensical results, by submitting the same case to the same jury that had just rendered a decision.").

to establish a 'colorable claim' against property to seek relief," *id.*—is merely one type of interest

sufficient (but not necessary) to have standing under section 362(d).  In fact, *D/C Distribution* goes

on to quote a Seventh Circuit case confirming that "an entity has standing if it has or will suffer an

injury redressable by or as a result of a court's ruling."  *Id.* at 609 (citing *Milwaukee Police Assoc.*

*v. Flynn*, 863 F.3d 636, 639 (7th Cir. 2017)).  The carrier in *D/C Distribution* had "not shown that

it has or will suffer an injury" if the stay were lifted.  *Id.*  In contrast, UEIC has identified a far-

from-hypothetical injury if I rule against them:  it could be artificially bound to the Judgment,

which a state appellate court held should not have been entered in the first place.  And Walker's

reliance on other cases to suggest a hyper-narrow reading of "party in interest" is similarly

misplaced.[8]  I agree with Collier's view that "although some cases have unduly limited the

availability of stay relief, the better approach is to recognize that any party affected by the stay

should be entitled to move for relief. . . . This avoids the anomalous situation in which a party is

subject to the automatic stay but is unable to seek relief even when damage may result from its

continuance."  3 COLLIER ON BANKRUPTCY ¶ 362.07[2] (citing *Brizendine v. Humboldt Express,*

*Inc. (In re Brown Transp. Truckload, Inc.)*, 118 B.R. 889, 893 (Bankr. N.D. Ga. 1990)).[9]

---

[8]     *C.P. Hall* involved an insurance carrier seeking to avoid their contractual liability to pay out on claims, but not in the automatic stay context. *In re C.P. Hall Co.*, 750 F.3d  659, 660 (7th Cir. 2014) (holding that an excess insurer's interest was too remote to have standing under 11 U.S.C. § 1109 to object to a settlement between the debtor and claimants that "increased the likelihood of [the carrier] having to honor its secondary-coverage obligation"). *JPM-Newcor* concerned an inapposite situation where an individual defendant in a pending adversary proceeding objected to a motion for final decree in the main case.  *In re JMP-Newcor Int'l, Inc.*, 225 B.R. 462, 464 (Bankr. N.D. Ill. 1998) (holding that 11 U.S.C. § 1109 did not confer standing to oppose the motion because he was simply unaffected by the final decree).  By the motion UEIC is not seeking a shield from having its coverage obligation triggered, nor is it unaffected by the stay.  Contrast those cases with *In re Glob. Indus. Tech., Inc.*, 645 F.3d 201, 213–14 (3rd Cir. 2011) (en banc) (finding an insurance carrier had standing to object to a plan that created a trust that "led to a manifold increase" in claims the carrier might have to pay out on) and *In re Quigley Co.*, 391 B.R. 695, 705–06 (Bankr. S.D.N.Y. 2008) (granting insurance carriers standing to object to confirmation and obtain discovery where plan provisions "directly affected" their rights), which are more on point to the situation here.

[9]     *See also In re B & I Realty Co., Inc.*, 158 B.R. 220, 223 (Bankr. W.D. Wash. 1993) (holding that the moving party need not be a creditor, but "must have an interest of its own to have standing" to move for stay relief); *Vieland v. First Fed. Sav. Bank (In re Vieland)*, 41 B.R. 134, 138 (Bankr. N.D. Ohio 1984) (holding that "party in interest" is not restricted to direct creditors, and that the term as used in "section 362(d) must be determined on a case by case basis with reference to the interest asserted and how said interest is affected by the automatic stay").

Confirming UEIC's standing here is also consistent with the Supreme Court's recent jurisprudence on the statutory term "party in interest." Though confronted in a different section of the Bankruptcy Code not applicable to chapter 7 cases (section 1109), the Supreme Court's unanimous analysis of the term is instructive. In *Truck Ins. v. Kaiser Gypsum*, the Supreme Court held that an "insurer with financial responsibility for a bankruptcy claim is sufficiently concerned with, or affected by, the proceedings to be a 'party in interest' that can raise objections to a reorganization plan." *Truck Ins. Exch. v. Kaiser Gypsum Co., Inc.*, 602 U.S. 268, 272 (2024). The Court observed that "[t]his understanding aligns with this Court's observation that Congress uses the phrase 'party in interest' in bankruptcy provisions when it intends the provision to apply broadly." *Id.* at 278 (internal quotes omitted) (citing *Hartford Underwriters Ins. Co. v. Union Planters Bank, N.A.*, 530 U.S. 1, 7 (2000)). Thus, as an "insurer with financial responsibility for bankruptcy claims can be directly and adversely affected by the reorganization proceedings in these and many other ways, making it a 'party in interest' in those proceedings," Truck Insurance was a party in interest because it might "carry[] the financial burden" of the plan. *Id.* at 281–82 ("That potential financial harm—attributable to Truck's status as an insurer with financial responsibility for bankruptcy claims—gives Truck an interest in bankruptcy proceedings and whatever reorganization plan is proposed and eventually adopted."). The Court also noted the effect of a discharge injunction on the incentives of the debtors and claimants, and how that reality can give an insurance carrier a unique and necessary perspective on certain matters:

> For the Debtors, the Plan eliminates all of their ongoing liability. The Claimants similarly have little incentive to propose barriers to their ability to recover from Truck. Truck may well be the only entity with an incentive to identify problems with the Plan. This realignment of the insured's economic incentives . . . makes participation in the bankruptcy by insurers—who will ultimately be asked to foot the bill for most or all of those claims—critical.

*Id.* at 282 (internal quotation omitted).

9

Here, UEIC has an economic interest that is directly and adversely affected by the stay. Though Steward might be the typical party to seek relief under these circumstances (and probably should have sought stay relief at the onset of this chapter 7 case), the discharge she received eliminates any incentive to take that step now, as evidenced by her lack of participation here. To hold that UEIC does not have standing under these circumstances would create an absurd paradox, where insurers shouldering the entire cost and burden of a defense are at the mercy of insureds whose incentives to cooperate with the defense are drastically reduced by the reality of discharge.[10] So I reject Walker's lack-of-standing argument.

Walker's second objection to the motion is that modifying the stay would harm the Debtor. But Walker does not credibly identify any harm. Walker argues that annulling the stay would annul the discharge and expose Steward to increased liability (Resp. at 3, 10, 11, 12), but that argument misunderstands how a discharge works and ignores that an insurance carrier's liability (typically) survives that discharge.[11] As discussed above, Walker never filed a complaint to determine dischargeability of his claim or objected to Steward's discharge, and the deadline to do so has passed under both the Bankruptcy Rules and an express order entered by my predecessor. If Walker litigates his tort claim further, he would not be able to pursue Steward personally because of the section 524 injunction. Walker would be limited to proceeding against Steward nominally, and limited to recovering solely from insurance proceeds.[12]

---

[10]   *Cf. Hendrix*, 986 F.2d at 197 ("Hendrix—which is to say Atlanta Casualty Company, for Hendrix [the debtor] has no interest in the matter, his discharge being secure, unmodified, and unchallenged, as far as any effort by the [creditors] to collect a judgment against him arising from the accident is concerned—appeals.").

[11]   *See, e.g.*, *Hawxhurst*, 40 F.3d at 180 ("[Claimant] was not required to file a proof of claim in the bankruptcy court in order to proceed against [debtor]'s insurers outside of bankruptcy."); *In re Shondel*, 950 F.2d 1301, 1308 (7th Cir. 1991) ("[T]he 'fresh-start' policy is not intended to provide a method by which an insurer can escape its obligations based simply on the financial misfortunes of the insured.").

[12]   *Hendrix*, 986 F.2d at 199 ("The purpose of such an injunction is to protect the debtor from suits to collect debts that have been discharged in bankruptcy. Although the suit in the state court, if allowed to be reopened, will presumably still name [debtor] as the defendant, it is equally the case that the injunction, as modified, will still

If that result standing alone (without any other facts) prejudiced a debtor, granting stay relief for a plaintiff to solely pursue insurance proceeds would never happen. But that relief is certainly appropriate in some cases. And here, it is telling that Steward, who is represented by counsel, has not chimed in to express any of the fears urged by Walker given that it is Steward, and not Walker, who (according to Walker) would allegedly suffer if the stay is annulled with respect to the Appellate Order as requested. Nor has the chapter 7 trustee indicated any concern that administration of the estate would be negatively affected by the relief sought. Their silence confirms that any alleged "prejudice" to the debtor or the estate is illusory.

Third, Walker asserts that by filing the motion, UEIC "is violating the discharge injunction." (Resp. at 8, 9) That argument does not follow. Seeking stay relief is not continuing an action or attempting to collect a discharged debt from Steward personally. *Compare* 11 U.S.C. § 524(a)(2) ("A discharge in a case under this title—operates as an injunction against the commencement or continuation of an action, . . . or an act, to collect . . . any such debt as a personal liability of the debtor."). Moreover, as the Seventh Circuit has observed, discharge injunctions are not hermetic: "lifting of the injunction to permit [tort claimants] to proceed solely against [the debtor's] insurer is thus not inconsistent with the purpose either of the injunction or of the statute by virtue of which it sprang into effect automatically upon [the debtor's] discharge." *Hendrix*, 986 F.2d at 199. A motion here is exactly the right process for a party to follow when they believe they need relief from one of this Court's orders or an injunction imposed by the Bankruptcy Code. Walker's unsupported position would bar the doors of this Court to affected parties the minute the discharge order is entered. That is not how the Bankruptcy Code works.

---

protect him against any effort by the [tort claimants] to collect the judgment in that suit (if they get a judgment) from him . . ..");  *Fernstrom*, 938 F.2d at 736 (same).

Fourth, Walker urges that in filing her chapter 7 case, Steward "abandoned the appeal." (Resp. at 7, 12) But Walker misunderstands the authority he cites. In *Bowen v. Kravets*, the Illinois Appellate Court merely explained that upon a bankruptcy filing, the debtor's assets, including all causes of action that belong to him, become property of the estate. 2013 IL App (2d) 100671-U, 2013 WL 490722 (Ill. App. Ct. Feb. 7, 2013). But unlike in *Bowen*, we are not dealing here with a claim that is an asset of the estate, but rather a potential liability. It is nonsensical to suggest that, by filing for bankruptcy protection, a debtor automatically gives up any ability she (or her estate or agents) may have to seek to overturn judgments against her in a bid to reduce claims against the estate. Walker cites no authority suggesting that the debtor does so, and I am aware of none.

Finally, Walker argues that stay annulments should be granted sparingly. (Resp. at 11) Perhaps so, but having found cause to grant relief, I am convinced annulment is the proper remedy. Section 362 "is flexible to allow courts to fashion the relief to the particular circumstances."[13] As in other cases where retroactive annulment was granted, this relief creates the most efficient result. While parties to litigation must take the automatic stay seriously and are advised not to imprudently delay notifying nonbankruptcy courts and seeking relief, oversights happen. Either Steward or Walker could have notified the Illinois Appellate Court that their matter was stayed. Neither did. Steward, Walker, or UEIC could have moved to lift the stay earlier. None of them did. But UEIC's tardy request does not present the type of "hall pass" for bad behavior that Walker warns against. (Resp. at 11) And by allowing the Debtor's insurer to seek to overturn a claim against the debtor,

---

[13]   3 COLLIER ON BANKRUPTCY ¶ 362.07[1] ("It appears that, although most courts hold that actions taken in violation of the stay are void, retroactive relief from the stay may be granted by annulling the stay. . . . In any event, it seems clear that a court has the power to validate actions taken in violation of the stay, either by viewing them as merely voidable or by annulling the stay retroactively."); *see also In re Myers*, 491 F.3d at 127–28 ("[T]his Court and others have held that actions in violation of the stay, although void (as opposed to voidable), may be revitalized in appropriate circumstances by retroactive annulment of the stay."; "The use of the term 'annulling' would be redundant with 'terminating' if courts were not empowered to grant retroactive relief.").

I am hardly "providing creditors with incentive to continue to file suit against debtors in the hope that the court will automatically validate the action." (*Id.*)[14] These concerns are exaggerated. It goes without saying that I will enforce the automatic stay and discharge injunction enacted by Congress in every case appropriate under the law.

Ultimately, I suspect that Walker's true objection to the relief requested here is that Walker does not like the Appellate Order and believes calling it "void" would improve Walker's recently filed bad faith suit against UEIC. But that is not what the automatic stay is for. The automatic stay is "one of the most fundamental debtor protections provided by the bankruptcy laws." *Fernstrom*, 938 F.2d at 735. What Walker asks does not help the Debtor in any way. Instead, Walker attempts to use the automatic stay as both a sword and a shield, seeking to permanently hang around UEIC's neck a Judgment that is not only not a final, nonappealable order, but one that we already know would be reversed but for operation of the automatic stay. Section 362 is not a tool for non-debtor plaintiffs hoping to hide from having to prove up their claims in a court of competent jurisdiction. *See D/C Distribution*, 617 B.R. at 609 ("FFIC is not the debtor in this case and its attempt to shelter under the automatic stay is misplaced.").

To be sure, many other issues raised in the parties' pleadings will be subject to future litigation between Walker and UEIC. I understand that Walker purchased potential claims of Steward's estate against UEIC related to the accident; that UEIC may challenge its alleged coverage obligations; and that Walker seeks to stand in Steward's shoes to pursue a bad faith claim against UEIC. These are matters for the Illinois state courts. I am not ruling on them.

---

[14]   For this proposition, Walker cites the lower court opinion in *In re Pettibone Corp.*, 110 B.R. 848, 854 (Bankr. N.D. Ill.), *aff'd sub nom. Pettibone Corp. v. Baker*, 119 B.R. 603 (N.D. Ill. 1990), *vacated sub nom. Pettibone Corp. v. Easley*, 935 F.2d 120 (7th Cir. 1991). In vacating the decision that Walker relies upon, the Seventh Circuit (with Judge Easterbrook writing for the court) seemed unconcerned about this worry, noting that "[w]hile the stay was outstanding, the bankruptcy judge could have modified or lifted it, perhaps backdating the effect of that decision." 935 F.2d at 123.

But for the reasons stated here, cause exists to annul the automatic stay with respect to the

Appellate Order as of the Petition Date.  I will issue a separate order consistent with this Opinion

granting the relief requested in the motion.


Signed:   February 28, 2025          By:   _____

                                        MICHAEL B. SLADE
                                        UNITED STATES BANKRUPTCY JUDGE

14