**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| In re: | ) | Chapter 7 |
| | ) | |
| LAKESHA R. STEWARD, | ) | Case No. 22 B 14986 |
| | ) | |
| Debtor. | ) | Honorable Michael B. Slade |
| | ) | |

**MEMORANDUM OPINION**

Tsujiorka Walker, plaintiff in a pre-petition personal injury suit against the Debtor, asks

me to alter or amend the Opinion (Dkt. No. 81) and Order (Dkt. No. 82) that I issued on

February 28, 2025.[1]  For the reasons described here, Walker's motion (Dkt. No. 83) is denied.

**I.**

Walker sued the Debtor in state court for injuries sustained in a 2015 traffic accident.

Following a jury trial, Walker obtained a pre-petition Judgment for $827,868.  Steward appealed.

After the appeal was fully briefed, Steward filed for bankruptcy.  But unaware of the bankruptcy

and automatic stay, the Illinois Appellate Court issued a decision, reversing the judgment and

remanding Walker's suit for a new trial because the state trial judge had excluded certain expert

testimony regarding Walker's contributory negligence that should have been admitted.

Even though the Appellate Order was in the Debtor's favor, it technically violated the

automatic stay because it was issued post-petition.  So the Debtor's insurer, UEIC, asked me to

retroactively annul the stay so that the Appellate Order would stand.  (Dkt. No. 70)  Walker

objected; he wants the Judgment treated as a final, non-appealable order, even though it is not

(and wouldn't be even if the Appellate Court had delayed a decision until the stay expired).

---

[1]  All capitalized terms used but not defined here have the definitions given to them in the Opinion, which is
available at *In re Steward*, 668 B.R. 203 (Bankr. N.D. Ill. 2025).  Familiarity with the Opinion is presumed.

As I observed in my Opinion, the automatic stay is a shield, not a sword, and assessing whether to lift or annul it is an exercise in common-sense judgment as to what makes practical sense under the circumstances. *Steward*, 668 B.R. at 209. Neither the Debtor nor the Trustee (the primary parties that benefit from the stay) objected to UEIC's motion for stay relief. And there was no serious reason to leave the stay in place; it was common sense to annul the stay, permitting the Appellate Order to stand. Walker should not be able to use the Debtor's bankruptcy tactically to reinstate a Judgment a state appellate court deemed improper and avoid having to prove his claims. So for that and other reasons described in my Opinion, I found that under the Seventh Circuit's *Fernstrom* factors, the facts and circumstances supported annulling the automatic stay as to the Appellate Order. *Id.* at 209–14 (applying *Int'l Bus. Machines v. Fernstrom Storage & Van Co. (In re Fernstrom Storage & Van Co.)*, 938 F.2d 731, 735 (7th Cir. 1991)). Under my decision, Walker is now free to pursue a retrial in state court with the Debtor named as a nominal defendant if he wants to recover against the UEIC policy. *Id.* at 208.

Walker was dissatisfied with my ruling but did not appeal. Instead he filed a motion to alter or amend my Opinion and Order pursuant to Federal Rule of Civil Procedure 59(e), which is incorporated by reference in Federal Rule of Bankruptcy Procedure 9023. (Dkt. No. 83)

II.

Rule 59(e) serves a specific and limited purpose: to alert a court to a manifest error of law or fact or newly discovered evidence, giving the court an opportunity to rectify errors in a recent decision to save the parties and appellate courts from an unnecessary appeal. *Banister v. Davis*, 590 U.S. 504, 508 (2020); *Moro v. Shell Oil Co.*, 91 F.3d 872, 876 (7th Cir. 1996); *Russell v. Delco Remy Div. of General Motors Corp.*, 51 F.3d 746, 749 (7th Cir. 1995); *Keene Corp. v. Int'l Fid. Ins. Co.*, 561 F. Supp. 656, 665 (N.D. Ill. 1982), *aff'd*, 736 F.2d 388 (7th Cir. 1984). Given

2

this narrow purpose, Rule 59(e) is "generally reserved for extraordinary cases" where the movant "must clearly establish: (1) that the court committed a manifest error of law or fact, or (2) that newly discovered evidence precluded entry of judgment." *Reilly v. Will Cnty. Sheriff's Off.*, 142 F.4th 924, 929 (7th Cir. 2025) (quotation marks omitted); *see also Del Signore v. Nokia of Am. Corp.*, No. 23-1973, 2024 WL 503953, at *3 (7th Cir. Feb. 9, 2024), *cert. denied*, 145 S. Ct. 194 (2024) ("A motion under Rule 59(e) must introduce new evidence or demonstrate a manifest error of law or fact."); *Yorke v. Citibank, N.A. (In re BNT Terminals, Inc.)*, 125 B.R. 963, 977 (Bankr. N.D. Ill. 1990) ("A motion requesting the court to alter or amend its judgment must at the very least submit newly discovered evidence or identify manifest errors of law or fact.").

Rule 59(e) is often abused. So let me clarify the limited circumstances where Rule 59(e) might work. A "manifest error" is "the wholesale disregard, misapplication, or failure to recognize controlling precedent." *Pucillo v. Nat'l Credit Sys.*, 66 F.4th 634, 642 (7th Cir. 2023) (quoting *Oto v. Metro. Life Ins. Co.*, 224 F.3d 601, 606 (7th Cir. 2000)). It is a mistake "not of reasoning but of apprehension." *Quaker Alloy Casting Co. v. Gulfco Indus., Inc.*, 123 F.R.D. 282, 288 (N.D. Ill. 1988) ("The motion for reconsideration would be appropriate where, for example, the Court has patently misunderstood a party."). The trigger for a Rule 59(e) motion is an inaccuracy that is *obvious*—not analysis the movant disputes. *See Manifest (adj.)*, *sense 1.a*, OXFORD ENGLISH DICTIONARY (March 2025), https://doi.org/10.1093/OED/6485843516 (last visited Aug. 12, 2025) ("Clearly revealed to the eye, mind, or judgement; open to view or comprehension; obvious."). And even where such error exists, whether to grant the motion is up to the issuing court's discretion. *LB Credit Corp. v. Resolution Trust Corp.*, 49 F.3d 1263, 1267 (7th Cir. 1995); *Kondik v. Ebner (In re Standard Foundry Prods., Inc.)*, 208 B.R. 164, 166 (Bankr. N.D. Ill. 1997).

3

A Rule 59(e) motion is most certainly "not a procedural folly to be filed by a losing party who simply disagrees with the decision." *BNT Terminals*, 125 B.R. at 977; *Desmond v. Keebler (In re Keebler)*, 658 B.R. 908, 919 (Bankr. N.D. Ill. 2024) ("A manifest error is not demonstrated by the disappointment of the losing party." (quoting *Oto v. Metro. Life*, 224 F.3d at 606)). The purpose of the Rule "is not to serve as a vehicle to relitigate old matters." *Standard Foundry Prods.*, 208 B.R. at 166 (citing *King v. Cooke,* 26 F.3d 720, 726 (7th Cir. 1994)); *BNT Terminals*, 125 B.R. at 977 ("The Court does not appreciate the filing of a motion under Rule 59(e) which simply rearuges what the party has already put before the Court."). As one particularly frustrated court put it, a "Court's opinions are not intended as mere first drafts, subject to revision and reconsideration at a litigant's pleasure." *Quaker Alloy Casting*, 123 F.R.D. at 288 ("Motions such as this reflect a fundamental misunderstanding of the limited appropriateness of motions for reconsideration."). Rule 59(e) motions are not substitutes for an appeal. *Najarian Cap., LLC v. Cunningham (In re Cunningham)*, 600 B.R. 898, 906 (Bankr. N.D. Ga. 2019); *In re Oak Brook Apartments of Henrico Cnty., Ltd.*, 126 B.R. 535, 536 (Bankr. S.D. Ohio 1991).

Walker does not claim that any newly discovered evidence justifies his position, and thus I should amend my Opinion only if Walker convinces me that I made a patently obvious error, the correction of which would require denying the relief I previously granted. Here, Walker does not come close to justifying the Rule 59(e) relief for alleged "manifest error" that he seeks.

III.

Walker offers many challenges to my Opinion. But I have reviewed and re-reviewed all relevant materials (including the record predating my appointment to the bench), and see no reason to alter my ruling. Walker's Motion largely rehashes arguments advanced in his prior Opposition (Dkt. No. 76) that I already rejected. His misapprehensions of the relevance of

4

various allegations,[2] misunderstandings of bankruptcy mechanics,[3] disagreements as to the key

takeaways to be drawn from relevant case law,[4] and mischaracterizations of what I considered in

reaching my ruling[5] do not qualify as manifest errors or new facts discovered after the last round

of briefing that might serve as a proper basis to pursue a Rule 59(e) motion.

---

[2]   For example, Walker says I should not have granted the annulment because (he alleges) UEIC has been acting in bad faith. (Mot. at 4–6)  But each item in the Motion's long list of allegations about UEIC's conduct either was or could have been raised in the Opposition (the claim of "bad faith" is uttered 26 times in the Opposition and 25 times in the Motion).  And as I alluded to in the Opinion, *Steward*, 668 B.R. at 206, 213–14, the parties' cross-allegations of bad faith are relevant only in the state court proceedings; none suggest that UEIC is acting maliciously in seeking the limited relief that it requested from me—clarity that the Appellate Order will stand. It certainly was not bad faith to seek a stay modification here, even if the status of the Judgment may be a critical element of other litigation.  UEIC's obligations under the policy must be and will be determined somewhere else.  While Walker may believe he is now in a worse litigation position than he originally thought, any buyer's remorse about his strategy is his fault alone.

[3]   For example, Walker asserts that the "Opinion does not take into account that the moment the Debtor filed for bankruptcy, the Debtor did not pursue her appeal" (i.e., that Steward abandoned the appeal by filing chapter 7). (Mot. at 2)  Walker made that claim throughout his Opposition (Opp. at 5, 6, 7, 12), and I addressed it in my Opinion.  *Steward*, 668 B.R. at 212 ("It is nonsensical to suggest that, by filing for bankruptcy protection, a debtor automatically gives up any ability she (or her estate or agents) may have to seek to overturn judgments against her in a bid to reduce claims against the estate.").  Nothing in the Motion suggests my conclusion was incorrect.  It does not matter that no one objected to Walker's proof of claim (which does not have the legal effect of a judgment, and merely determines the amount at which a claim will be "allowed" for purposes of distributions by the chapter 7 trustee), it does not matter that the appeal remained stayed during the pendency of the chapter 7 case (that is the "breathing spell" at work), and it does not matter that in the interim the chapter 7 trustee sold to Walker certain claims owned by the estate.  Walker does not offer any explanation of why he believes those facts affect the status of the appeal, and I cannot think of any either.

[4]   For example, in a section challenging my finding that UEIC had standing to seek the stay annulment (Mot. at 6– 7), Walker states that I misinterpreted *Bowen v Kravets,* 2013 IL App (2d) 100671-U, 2013 WL 490722 (Ill. App. Ct. Feb. 7, 2013) in my Opinion at *Steward*, 668 B.R. at 212.  Walker's argument does not make sense. Walker cited *Bowen* for the proposition that "[a]s soon as she opted to file the chapter 7 case, the Debtor abandoned her appeal." (Opp. at 12)  But that is not a correct characterization of the case.  In *Bowen*, the Illinois Appellate Court merely explained that when a party files for bankruptcy, the debtor's assets, including all claims and causes of action that belong to him, become property of the estate.  *Bowen*, 2013 WL 490722, at *3. Where a debtor is not "in possession," such as in a chapter 7, the trustee takes over standing to pursue the debtors' claims, but a debtor's claim is not abandoned upon filing for bankruptcy.  Instead, "the bankruptcy trustee has standing to pursue it if she so chooses," and standing reverts to the debtor if the trustee determines not to pursue the claim.  *Id.* at *3–4 (abandonment of the claim by the trustee "would, if granted, cause standing to revert to [the debtor]"); *see also Auday v. Wet Seal Retail, Inc.*, 698 F.3d 902, 904–5 (6th Cir. 2012) (holding chapter 7 trustee had sole authority to bring debtor's tort claim that accrued prepetition and observing that, had the trustee abandoned the claim, standing to pursue it would have returned to the debtor).

[5]   For example, Walker alleges that my Opinion "only considers UEIC's harm, not the injured person, the Debtor, or the Trustee." (Mot. at 12)  Not so.  I considered all of Walker's arguments about purported harm to the Debtor, the estate, and to Walker, and found them unpersuasive.  *See Steward*, 668 B.R. at 206, 208–09, 211–12 (noting that the Debtor will suffer no prejudice because she is irreversibly discharged and not subject to personal liability for Walker's claim, the estate will suffer no harm as the relief does not affect the largely completed administration of the estate, and Walker will not experience undue hardship—having to prove up his tort claim on the merits is his obligation as plaintiff, not a "harm" that will be suffered).

Although Walker's motion "burdens this Court with considering the same issues argued" before, wasting precious judicial resources, I "feel[] compelled to highlight [certain] foibles in [Walker's] arguments," lest still more judicial resources be wasted in the future. *See BNT Terminals*, 125 B.R. at 978.

First, Walker seems to be suggesting that an agreement he entered into with the chapter 7 trustee last year to purchase the estate's interest in claims against UEIC connected to the traffic accident also "settled" Walker's lawsuit against the Debtor, effectively mooting UEIC's stay annulment motion before it was filed. (Mot. at 9, 10)  Walker is mistaken.  The Agreement (Dkt. No. 42-1) approved in my predecessor's orders (Dkt. Nos. 44, 50) is not a settlement of any kind. The Agreement itself does not purport to settle the Walker suit or include a provision that the parties will seek dismissal of the lawsuit, which is what a settlement typically would say.  And as the Second Circuit held earlier this month, even an allowed proof of claim against a Debtor's estate "is not an enforceable money judgment" against the Debtor.  *Thermal Surgical, LLC v. Brown*, No. 24-127, -- F.4th --, 2025 WL 2263862, at *7 (2d Cir. Aug. 8, 2025) (calling the concept of an allowed claim being an enforceable money judgment "unprecedented").

Moreover, had the chapter 7 trustee believed she was settling Walker's claim against the estate in the Agreement, she would have sought approval of the Agreement as a settlement under Federal Rule of Bankruptcy Procedure 9019.  She did not.  And my predecessor was crystal clear that the sale was nothing more than a "routine" sale of estate assets under 11 U.S.C. § 363 (and not a settlement of estate liabilities), and his order did not adopt any of the Agreement's recitals as factual findings—something he expressly confirmed on the record at the July 22, 2024 Hearing.  Dkt. No. 75, 7/22/24 Hr'g Tr. 3:19-20 ("I made no findings. I just granted a sale motion."), 4:7-13 ("As far as creditors were concerned, the trustee sold a non-existent thing and

6

got money for it. That's great. I didn't make any findings. I did nothing that affects [UEIC]. This is merely the sale of these claims whether they're valid or not, whether they exist or not."); 4:17–5:2 (rejecting the notion that the sale order adopted the recitals in the Agreement); 5:11-18 ("I am making no findings about any conduct. I never made any findings about any conduct on the part of [UEIC]. All I did was grant a sale motion. The trustee wanted to sell these claims. Nobody objected. . . It's absolutely routine.").[6]

Relatedly, Walker suggests that I did not consider the enforceability of the Agreement and sale order or the effect my ruling might have on the bargain Walker believes he struck with the chapter 7 trustee (i.e., suggesting that allowing the Appellate Order to stand will negatively affect the value of the debtor claims he purchased from the estate). (*See* Mot. at 3) This argument was in the prior Opposition (Opp. at 5, 11 (annulling the stay would "undo" the Assignment and "devalue the insurance bad faith cause of action")), I evaluated it, and dismissed it as incorrect and irrelevant. Walker may in fact succeed in the retrial and again obtain a material judgment

---

[6]   Two related points are worth making at this point for the record: First, the chapter 7 trustee had no need to settle Walker's claim; it was the only prepetition claim asserted and the amount of the claim was irrelevant to the administration of the estate. *Steward*, 668 B.R. at 206; *see also Thermal Surgical*, 2025 WL 2263862, at *6 ("'[A]n allowed claim in bankruptcy serves a different objective from that of' a civil judgment. It 'permits the claimant to participate in the distribution of the bankruptcy estate[,]' but it isn't 'a judgment on which [the claimant] can execute against assets of the debtor.'" (alterations in original) (internal citations omitted) (quoting *Ziino v. Baker*, 613 F.3d 1326, 1328–29 (11th Cir. 2010)); *Thermal Surgical*, 2025 WL 2263862, at *7–8 (noting the reduced incentive to contest proofs of claim where "the claims against a debtor cumulatively exceed the debtor's assets"). Had the claim been 100 times larger, Walker still would have been entitled only to a distribution of the residual estate after administrative claims were paid—$447.87. It appears Walker's subordination of his claim in the Agreement, which Walker raises several times in his Motion (Mot. at 3, 8, 9), was meaningless—the trustee did not list Walker's claim in the section for subordinated claims in the final report, but rather as a regular general unsecured claim. (Dkt. No. 61, at 11)

Second, while a copy of Ms. Steward's insurance policy with UEIC is not in the record, most liability insurance policies provide that if a claim is settled without the carrier's consent, the insurer's coverage obligation is void. *See, e.g.*, *Caterpillar, Inc. v. Great Am. Ins. Co.*, 62 F.3d 955, 966 (7th Cir. 1995) (under Illinois law, "an insurer need not indemnify an insured when the insured violates a 'no action' clause, which clause relieves the insurer of all obligations to pay unless . . . liability is the result of a final judgment or comes with the express consent of the insurer" and "an insurer is released from its indemnity obligations when the insured violates a consent-to-settlement agreement"). UEIC obviously did not consent to any alleged settlement, and Walker (as Steward's assignee) continues to pursue UEIC for coverage, which makes Walker's argument here doubly puzzling.

7

that would underpin the claims against UEIC that he has purchased. His statement that he will be prejudiced because Illinois law prohibits proceeding against the insurer directly (Mot. at 3) is simply wrong; the right process is for Walker to proceed against the Debtor *nominally*, as I outlined in the Opinion and which has been explained in numerous opinions issued by the Seventh Circuit and other courts. *See Steward*, 668 B.R. at 208, 212 (citing cases).

When Walker purchased claims the estate might have against UEIC ("whether they're valid or not, whether they exist or not," Dkt. No. 75, 7/22/24 Hr'g Tr. 4:12-13), the Judgment was *not* a final order and was subject to a pending appeal. Under no circumstance could the Judgment have been held out to a party or court as a final, non-appealable order. As I have said multiple times, Steward's filing for bankruptcy did not end her appeal, nor did it constitute abandonment of the appeal. To suggest that it did calls into question the entire concept of the breathing spell afforded by 11 U.S.C. § 362. Walker knew or should have known that he bought claims against UEIC with the Judgment subject to an appeal and adjusted his purchase price accordingly—especially when Walker had a preview of the outcome of the appeal. *Cf. Billhartz v. C.I.R.*, 794 F.3d 794, 800 (7th Cir. 2015) (noting that "a party's erroneous prediction or judgment about future events" does not undermine the enforceability of a contract).

## IV.

The only non-frivolous argument that Walker raised the first time around was the claim that UEIC lacked standing to seek annulment of the stay. He rehashes that argument again here, convinced that because UEIC is neither a debtor nor a creditor and is only seeking to protect its own interests it cannot be a "party in interest" with standing (Mot. at 6–8). But if that were true, insurance carriers would almost never have standing to appear in a bankruptcy of their insured, and we know that is not the case. *See Steward*, 668 B.R. at 210 n.8 (citing cases where insurance

8

companies were held to have standing); *In re AIO US, Inc.*, No. 24-11836, -- B.R. --, 2025 WL 1617477, at *1 (Bankr. D. Del. June 6, 2025) ("[T]he question a bankruptcy court faces after *Truck Insurance* is fundamentally the same one that many bankruptcy courts faced before it – how to calibrate an insurer's right to participate and be heard in its insured's bankruptcy case so as to permit the insurer to protect its legitimate interests, without permitting an insurer (or any party in interest, for that matter) to weaponize its procedural rights so that they can be used for tactical advantage in other disputes."). The papers here confirm (again) that UEIC has a legitimate interest in determining whether there is a claim against Steward that it is obligated to satisfy, and that it is Walker who is trying to weaponize the automatic stay to artificially bolster his position against UEIC in state court litigation. *Steward*, 668 B.R. at 213. Walker's Motion only further convinces me of that and does not credibly identify any mistakes in my analysis.

While Walker's standing argument wasn't frivolous the first time around, it was inconsistent with the Supreme Court's 2024 decision in *Truck Ins. Exch. v. Kaiser Gypsum Co.* The Supreme Court there held that an "insurer with financial responsibility for a bankruptcy claim is sufficiently concerned with, or affected by, the proceedings to be a 'party in interest' that can raise objections to a reorganization plan." 602 U.S. 268, 272 (2024). It reiterated the "observation that Congress uses the phrase 'party in interest' in bankruptcy provisions when it intends the provision to apply broadly." *Id.* at 278 (internal quotes omitted). As an "insurer with financial responsibility for bankruptcy claims can be directly and adversely affected by the reorganization proceedings in these and many other ways" Truck Insurance was "a 'party in interest' in those proceedings." *Id.* at 281.

Walker suggests my discussion of *Truck Insurance* was misplaced because the Supreme Court there confronted the term "party in interest" in a provision applicable only to chapter 11

9

cases. (Mot. at 12) But the term Congress used in 11 U.S.C. § 1109(b) ("party in interest") is identical to the term Congress used in the provision at issue here, 11 U.S.C. § 362(d)—a provision applicable in cases under *all* chapters of the Bankruptcy Code. Thus, my Opinion acknowledged that the context here wasn't identical to *Truck Insurance*, *see Steward*, 668 B.R. at 210, but still found the case instructive in interpreting Congress's use of the same term in another provision applicable in chapter 11 and chapter 7 cases. Walker cites no case declining to apply *Truck Insurance* in chapter 7, and it bears noting that the only other bankruptcy judges to consider whether *Truck Insurance*'s analysis is useful in chapter 7 thus far have come to the same conclusion that I did. *See In re Team Sys. Int'l, LLC*, No. 22-10066, 2024 WL 4647489, at *2 (Bankr D. Del. Oct. 21, 2024) ("The Supreme Court, however, recently held in *Truck Insurance* that the phrase 'party in interest' is meant to be interpreted broadly and should include any party who is 'potentially concerned with, or affected by, a proceeding.'"); *In re Delaney*, -- B.R. --, 2025 WL 2324407, at *4 (Bankr. D.S.C. Aug. 12, 2025) (applying a "big tent interpretation" of *Truck Insurance*). That two other bankruptcy judges have also been guided by *Truck Insurance* in chapter 7 cases (and none have yet disagreed with its relevance) forecloses any argument that taking cues from our Supreme Court in this manner was a *manifest* error of law.

The truth is that many of the statements I quoted from *Truck Insurance* are clearly applicable here. Nothing about the Supreme Court's conclusion that Congress uses the term "party in interest" when it wants to capture a broad group was limited to chapter 11 provisions. I'm aware of no court that uses different rules of construction for different chapters of the Bankruptcy Code. It also makes no sense to suggest that while insurance companies who might bear the financial burden of a proposed plan of reorganization can object to it, insurance companies cannot seek to lift the stay when leaving it in place could cause them an identical

financial burden.  Walker offers no rationale for *why* the reasoning of *Truck Insurance* would not apply here—particularly when the claims he purchased are based on the premise that UEIC had and has a financial obligation to cover the Judgment—and I cannot think of any, either.

Stated differently, Walker again asserts that UEIC has no standing to seek a modification of the automatic stay "in place of the Debtor."  (Reply at 4)  Not only was this argument made before and rejected in my Opinion, but it ignores the contractual relationship between the Debtor and UEIC *as alleged by Walker*.  What Walker claims to be UEIC's contractual relationship with the Debtor—to pay on any claim where the terms of the insurance policy are met—gave UEIC all the standing it needed to seek the limited relief it requested here.

V.

Walker also alleges that granting UEIC's motion was inconsistent with my predecessor's ruling on UEIC's unsuccessful motion to vacate the sale of the estate's claims against it.  He asserts that my predecessor found that UEIC is not a creditor and therefore has no standing and, thus, my finding that UEIC has standing in these circumstances constitutes error.  (Mot. at 1, 10) If Walker believed finding standing here would be in direct contravention of my predecessor's prior rulings, he could and should have argued that specific point in the Opposition, where he devoted section III.A to standing and attached the transcript from the hearing on UEIC's motion to vacate the sale.  The intent of Rule 59(e) "is not to give the moving party another 'bite of the apple' by permitting the arguing of issues and procedures that could and should have been raised prior to judgment." *BNT Terminals, Inc.*, 125 B.R. at 977.

Regardless, I was aware of Judge Goldgar's comments at the July 22, 2024 hearing at the time I wrote the Opinion and I did not misapprehend his position.  His statements that "United Equitable isn't a creditor.  United Equitable would not have had any right to object to the sale,"

11

Dkt. No. 75, 7/22/24 Hr'g Tr. 2:19-21, did not constitute "law of the case" that eviscerated UEIC's standing to participate in a different part of the bankruptcy proceedings. His observation was limited to the sale of a specific estate asset and is entirely consistent with my ruling. The sale and assignment of potential claims that the estate might have against UEIC did not implicate any of UEIC's coverage rights or obligations—while it is likely that having Walker in the driver's seat of that litigation (instead of the chapter 7 trustee) means the prosecution of estate claims will be more robust, preserving an easier defense is not an interest the bankruptcy court is tasked with protecting when overseeing the maximization of an estate's value. That situation directly contrasts with the obligation UEIC may have to pay out under its insurance policy for any judgment ultimately awarded in the Walker lawsuit—a direct pecuniary interest that it sought to clarify by modifying the automatic stay. My Opinion explains, correctly, that whether a debtor's insurance carrier has standing to participate in a specific bankruptcy "event" depends on the particular facts and circumstances of that event. *Steward*, 668 B.R. at 208–09. There are times a carrier will have standing and times when it will not. This is one of the times it does. I did not make an error in my ruling on UEIC's standing, let alone a manifest error.

VI.

Walker doesn't like that I found his arguments against annulling the stay unpersuasive, but the remedy for that is an appeal to the District Court, not a motion to reconsider my ruling. That said, I caution Walker against further attempts to use the automatic stay to resurrect a Judgment that the Illinois Appellate Court reversed. Annulling the automatic stay to permit the Appellate Order to stand, under the facts and circumstances present here, made eminent sense. Walker's opposition and his second bite at the apple here have caused the parties and the court to expend considerable resources addressing his effort to avoid a retrial. But being remanded for a

12

new trial is not an uncommon occurrence, and Walker's repeated mischaracterizations of that

outcome as an unjust travesty are not well taken.

For the reasons stated here, Walker's Motion will be denied. I will issue a separate order

consistent with this Opinion.

Signed:   August 19, 2025       By: _____

                            MICHAEL B. SLADE
               UNITED STATES BANKRUPTCY JUDGE